Stephen W. Mooney, Esq.
Nevada Bar No. 9870
*smooney@wwhgd.com*
Ryan T. Gormley, Esq.
Nevada Bar No. 13494
*rgormley@wwhgd.com*
WEINBERG, WHEELER, HUDGINS,
   GUNN & DIAL, LLC
6385 South Rainbow Blvd., Suite 400
Las Vegas, Nevada  89118
(702) 938-3838

*Attorneys for Defendant*
*OptumRx, Inc.,*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA,<br><br>             Plaintiff,<br><br>        v.<br><br>OPTUM, INC.; OPTUMRX, INC.; OPTUMINSIGHT LIFE SCIENCES, INC.; OPTUMINSIGHT, INC.; UNITEDHEALTH GROUP, INC.; THE LEWIN GROUP, INC.; EVERNORTH HEALTH, INC.; EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICE, INC.; EXPRESS SCRIPTS PHARMACY, INC.; EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC.; MEDCO HEALTH SOLUTIONS, INC.; ELEVANCE HEALTH, INC.; CARELONRX, INC.; CARELON INSIGHTS, INC.; DOE ENTITIES 1-10.<br><br>             Defendants. | Case No.<br><br>**JOINT NOTICE OF REMOVAL**<br><br>**DEMAND FOR JURY TRIAL** |

1   Defendants Express Scripts, Inc., and Medco Health Solutions, Inc. (together, **Express**

2   **Scripts PBM**), and ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc. (together,

3   **ESI Mail Pharmacy** and, collectively with Express Scripts PBM, **Express Scripts**), and OptumRx,

4   Inc. (**OptumRx**) (collectively, the **Removing Defendants**)[1], hereby remove the civil action titled

5   *State of Nevada v. Optum, Inc., et al.*, Case No. A-24-885923-C, pending in the District Court for

6   Clark County, Nevada, to the United States District Court for the District of Nevada. Copies of all

7   process, pleadings, and orders that have been filed in state court are attached as **Exhibit A**.

8   **INTRODUCTION**

9   1.   This action is one of thousands of cases filed nationwide by government entities,

10   among other plaintiffs, seeking to recoup costs allegedly incurred in addressing issues related to the

11   opioid crisis. The plaintiffs in these cases generally allege that manufacturers, distributors, and retail

12   pharmacies created a fraudulent scheme to inflate the prescription opioid market by misleading

13   doctors and the public about the addictive nature and efficacy of opioids. In a relatively small

14   number of cases, plaintiffs allege that pharmacy benefit managers (**PBMs**), through their design and

15   administration of formularies and utilization management, also contributed to the opioid crisis.

16   2.   In this case, the State of Nevada seeks damages and an order to abate a public

17   nuisance related to the opioid crisis that it alleges was caused in substantial part by PBMs.

18   3.   Removal is proper here for two separate reasons.

19   4.   First, removal is proper under the federal officer removal statute, 28 U.S.C. §

20   1442(a)(1), because the State of Nevada seeks to hold Express Scripts and OptumRx liable for

21   actions they performed at the direction of federal officials. Both the Fourth Circuit and the federal

22   district court overseeing the opioid multidistrict litigation (**Opioid MDL**) previously held in nearly

23   identical opioid cases that Express Scripts is entitled to invoke the federal officer removal statute

24   because of the work it performs for the U.S. Department of Defense (**DOD**) and its healthcare

25

26   _____
[1] Defendants UnitedHealth Group Incorporated, Optum, Inc., OptumInsight, Inc., OptumInsight

27   Life Sciences, Inc., The Lewin Group, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., Elevance Health, Inc., CarelonRx, Inc.,

28   and Carelon Insights, Inc., consent to this removal but do not join as removing parties. Those entities do not waive and expressly reserve all available defenses, including personal-jurisdiction defenses.

program known as TRICARE, which covers active-duty service members and their families across the country, including in Nevada. *County Bd. of Arlington County v. Express Scripts Pharmacy Inc.*, 996 F.3d 243, 257 (4th Cir. 2021); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *3–11 (N.D. Ohio Jan. 12, 2023).

5.   Second, removal is proper because this Court has original federal-question jurisdiction under 28 U.S.C. § 1331. The State's claims necessarily raise substantial and disputed questions of federal law—specifically, whether the Defendants owed and breached duties under the federal Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and its implementing regulations.

## BACKGROUND

### A.   Procedural History

6.   On January 26, 2024, the State of Nevada filed this lawsuit in the District Court for Clark County, Nevada. *See generally* Compl.

7.   The State brings claims for public nuisance, negligence, negligence per se, civil conspiracy, violations of the Nevada Racketeering Act, and a violation of Nevada's Deceptive Trade Practices Act. *Id.* at 37, 47, 50, 54, 61.

8.   The State alleges that Express Scripts and OptumRx, as PBMs, "favor[ed] and/or fail[ed] to restrict the use of opioids in their formularies," "collaborat[ed] with opioid manufacturers to deceptively and dangerously promote and to fail to disclose the risk of opioids," and "fail[ed] to maintain effective controls to prevent diversion in their own dispensing of opioids and to monitor their own claims data to prevent suspicious or inappropriate prescriptions of lethal opioids from reaching the community." *Id.* ¶ 1.

9.   The State further alleges that Express Scripts and OptumRx operate mail-order pharmacies, which the State claims are "two of the largest pharmacies in the country that have purchased, dispensed, and profited from dispensing opioids." *Id.* ¶ 136.

### B.   PBM Defendants

10.   Express Scripts PBM and OptumRx are pharmacy benefit managers, or PBMs. PBMs are very different from the manufacturers, distributors, and retail pharmacies named as

defendants in most other opioid lawsuits. As PBMs, Express Scripts PBM and OptumRx do not manufacture, market, advertise, distribute, prescribe, or dispense opioid medications.

11.    Rather, PBMs enter into service agreements with their clients—sponsors of health-insurance plans—to administer their prescription-drug benefits (*see id.* ¶ 114) and to process prescription claims for FDA-approved medications. For example, "[w]hen a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 478 (2020). "After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM." *Id.*

12.    Express Scripts PBM and OptumRx offer options to assist their clients with managing prescription-drug benefits, but it is up to plan sponsors to choose what benefits to provide to their plan beneficiaries and how to manage those benefits. In particular, plan sponsors select which medications their plans will cover (*i.e.*, what drugs are on a plan's formulary) and under what circumstances (*i.e.*, what utilization management and clinical programs, if any, are in place).

13.    Like most PBMs, Express Scripts PBM and OptumRx develop formularies, utilization management tools, and clinical programs that they offer to their clients. Some plan sponsors choose to adopt Express Scripts' or OptumRx's offerings, while others instead choose to customize a PBM option or create their own. Either way, the plan sponsor controls the formulary, utilization management, and clinical programs applicable to each plan it sponsors. The role of the PBM is to implement the plan sponsor's choices and administer the plan sponsor's prescription benefit design for the plan beneficiaries.

**GROUNDS FOR FEDERAL OFFICER REMOVAL**

14.    The federal officer removal statute permits any federal officer or "any person acting under that officer" who is sued "for or relating to any act under color of such office" to remove the case to federal court. 28 U.S.C. § 1442(a)(1).

15.    The federal officer removal statute is to be "liberally construed," *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007), "because the statute vindicates the interests of

government in preserving its own existence." *DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023) (cleaned up). Accordingly, there is "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

16.    Removal under the federal officer removal statute is proper when a removing party shows that "(a) it is a person within the meaning of the statute, (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *DeFiore*, 85 F.4th at 553 (cleaned up). The "causal nexus" element has two prongs: (1) defendants were "'acting under' a federal officer" and (2) the "action is causally connected with the [plaintiff's] claims." *Id.* at 554 (citation omitted).

17.    Simply put, there are four elements for federal officer removal: (1) a "person," (2) "acting under" a federal officer, (3) a connection between the action and plaintiff's claims, and (4) a colorable federal defense.

18.    Removal by one defendant under the federal officer removal statute removes the entire case to federal court. *Durham*, 445 F.3d at 1253; *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

19.    Express Scripts and OptumRx each independently satisfy all four elements here.

**A.    Removing Defendants Are "Persons" Under the Statute.**

20.    Removing Defendants are "persons" under the federal officer removal statute because they are corporations.

21.    "[C]ourts of appeals"—including the Ninth Circuit—"have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves By & Through v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (collecting cases); *see also Watson*, 551 U.S. at 152–53 (interchangeably discussing a "private person" and "company" when analyzing the relevant relationship under the federal officer removal statute).

**B.**    **Removing Defendants Acted Under Federal Officers.**

22.    "The words 'acting under' are broad, and the Supreme Court has made clear that the statute must be liberally construed." *Goncalves*, 865 F.3d at 1245 (cleaned up). The "acting under" requirement contemplates a relationship in which the government exerts some "subjection, guidance, or control" over a private entity beyond mere compliance with the law. *Watson*, 551 U.S. at 151 (citation omitted). The central question is whether the private entity is helping a federal officer "fulfill other basic governmental tasks" that "in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* at 153–54.

**1.**    **Express Scripts Acts Under the Direction of a Federal Officer in Providing Services to TRICARE.**

23.    Here, as multiple courts have found, Express Scripts' provision of PBM and mail-order pharmacy services to TRICARE members helps the DoD fulfill basic governmental tasks that it would have to perform itself if it had not contracted with Express Scripts. *See Arlington County*, 996 F.3d at 253–54 ("[T]he ESI Defendants are assisting DOD in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm.") (quoting *Watson*, 551 U.S. at 153–54); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *5 ("[P]roviding prescription drug benefits to military members and veterans is a 'basic governmental task' assigned to the DoD by statute. *See* 10 U.S.C. § 1073a. The DoD would have to administer the TRICARE program itself if the task was not delegated to [the Express Scripts] Defendants; this fact also strongly favors removal."); *Grider Drug, LLC v. Express Scripts, Inc.*, 2009 U.S. Dist. Lexis 107515, at *8 (W.D. Ky. Nov. 17, 2009) ("[T]he Court finds that when executing its duties under this contract ESI is 'acting under' the Secretary of the DoD because it is performing a job that the DoD would otherwise have to perform."), *aff'd*, 500 F. App'x 402, 403 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts.").

24.    The DoD is required by law to enter into contracts to provide healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. The DoD is also statutorily required to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g.

25.     To satisfy these statutory mandates, the DoD contracted with Express Scripts to provide pharmacy benefits and to administer the TRICARE Home Delivery/Mail Order Pharmacy (**TMOP**) for members of TRICARE across the country, including in Nevada. Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Arlington County*, 996 F.3d at 253–54. A copy of the publicly available contract between DoD and Express Scripts, Contract No. HT9402-14-D-0002 (**TRICARE Contract**), with certain redactions consistent with the Freedom of Information Act, is attached as **Exhibit B**. Section C of the TRICARE Contract is the Express Scripts Military Health Statement of Work (**SOW**), which specifies in comprehensive detail the services Express Scripts must provide.

26.     "The contract between the DoD and ESI is substantial." *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *2. It "is memorialized in a lengthy 174-page Statement of Work ('SOW')." *Id.* at *3.

27.     The DoD dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE. "Of particular importance here, the SOW requires exclusive use of the DOD Uniform Formulary when acquiring drugs for federal government employees." *Id.*; *see* Exhibit B, SOW §§ C.1.4, C.8.1. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." SOW § C.1.4. "The DoD formulary specifies which drugs are authorized for TRICARE members and sets requirements for prior authorization and utilization reviews, to assure 'medical necessity, clinical appropriateness and/or cost-effectiveness.'" *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *3 (quoting SOW § C.1.4).

28.     "The SOW also contains a 'Prescription Restriction Program' that requires ESI to submit quarterly lists of patients for potential pharmacy benefit restrictions 'based upon the number of controlled medications filled, the number of physicians prescribing controlled medications and the number of pharmacies that fill these prescriptions.'" *Id.* (citation omitted). "Once these lists are submitted, another entity determines if a restriction is appropriate and only then can the Express Scripts Defendants restrict a beneficiary's prescription benefits." *Id.*

29.     The TRICARE Contract also requires the use of "a tiered cost sharing structure, and a preference for generic over branded products." SOW § C.1.4. When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, the Express Scripts PBM serves in a capacity as a "fiscal intermediary on behalf of DoD to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries at retail pharmacies." *Id.* § C.1.6. Or as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.* When it causes any copayment to be charged to any TRICARE beneficiary for any medication, including prescription opioids, it does so in the manner and according to the directions carefully prescribed by the DoD. *See* SOW § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure.").

30.     These requirements are all mandated by Congress. *See* 10 U.S.C. § 1074g(a)(2)(A) (requiring TRICARE to use a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); 10 U.S.C. § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Congress not only requires cost-sharing that favors generics, but it also spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

31.     Similarly, the TRICARE Contract's SOW dictates every aspect of the TMOP that ESI Mail Pharmacy operates on behalf of the DoD. *See* SOW § C.7; *Arlington County*, 996 F.3d at 252 ("[T]he SOW dictates how the ESI Defendants must operate the TMOP."); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *3 ("The [SOW] contract . . . requires ESI to operate the TRICARE Mail-Order Pharmacy.").

32.     "[W]hile the ESI [Mail Pharmacy entities] were not signatories to the DOD contract, they performed the day-to-day management of the TMOP under the terms of the contract and were subject to extensive oversight by the federal government." *Arlington County*, 996 F.3d at 252. ESI Mail Pharmacy is therefore "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Id.* at 253–54.

33.     Simply put, the services Express Scripts provides to TRICARE are under the guidance and control of the DoD. As Judge Polster (the judge overseeing the Opioid MDL) aptly explained:

> [By] requiring exclusive use of its own Uniform Formulary—which is created and updated by the DoD Pharmacy and Therapeutics Committee—the DoD exercises guidance and control over the Express Scripts Defendants' performance. The formulary determines which pharmaceuticals are covered by TRICARE prescription benefit plans, and it contains cost-sharing tiers that determine the reimbursement amounts for various medications, including prescription opioids. Furthermore, the Uniform Formulary dictates which drugs are subject to prior authorization or utilization review requirements. . . . All prescription claims handled by the Express Scripts Defendants must be 'processed according to the benefit design' and the restrictions contained in the Uniform Formulary. . . .
>
> In addition, effectuating the Prescription Restriction Program requires ongoing, close coordination between the Express Scripts Defendants and the DoD. To prevent prescription drug abuse, the Express Scripts Defendants are required to use claims data to create a list of patients for potential prescription restriction, based on the number of controlled medications filled by the patient, the number of physicians prescribing these medications, and the number of pharmacies filling the prescriptions. However, the Express Scripts Defendants do not themselves have any authority to restrict a TRICARE member's prescriptions based on the lists they compile. Instead, the Defendants must send this data to a Military Treatment Facility or a Managed Care Support Contractor, who alone can determine whether restricting a patient's prescription benefits is appropriate. If these entities decide to impose a restriction, ESI must then take one of only two available restrictive actions delineated in the DoD contract. . . .
>
> These contract terms leave the Express Scripts Defendants little, if any, room for discretion as they administer the TRICARE program. Indeed, the contract states that

Defendants are to be paid fees for 'performing services under the contract.' . . . A review of the contract reveals that this characterization is correct—the Defendants perform largely administrative tasks as they carry out the directives of the government. . . .

In sum, the Express Scripts Defendants' relationship with the DoD is accurately described as one involving "subjection, guidance, or control" by the federal government, as outlined by the Supreme Court in *Watson*.

*In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *4–5 (citations omitted).

34.     Thus, Express Scripts is "acting under" a federal officer when providing services for the TRICARE program. *See Arlington County*, 996 F.3d at 251–54; *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *4–5; *Grider*, 2009 U.S. Dist. Lexis 107515, at *5–9.

> **2.     The Express Scripts PBM Acts Under the Direction of a Federal Officer in Providing Services to FEHBP.**

35.     Similarly, the Express Scripts PBM acts under the direction of a federal officer when it provides services for federal employees under the Federal Employees Health Benefits Program (**FEHBP**). In the Federal Employees Health Benefits Act of 1959 (**FEHBA**), Congress empowered the Office of Personnel Management (**OPM**) "to contract with private carriers for federal employees' health insurance." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 90 (2017).

36.     As one such provider, the Express Scripts PBM is subject to OPM's requirements, oversight, and control in administering and supporting FEHBP plans, including specific regulations OPM established to govern PBM providers, *see* 48 C.F.R. §§ 1602.170-16(a), 1604.7201(a), 1652.204-74(a), 1652.204-70, and 1652.246-70, and specific guidelines OPM issued to govern pharmacy benefits, including guidelines on formulary management, utilization management, and prescription opioids, among other topics. *See, e.g.*, FEHB Program Carrier Letter 2019-10, https://www.opm.gov/healthcare-insurance/healthcare/carriers/2019/2019-10.pdf.

37.     OPM closely monitors the Express Scripts PBM's performance of its contractual tasks by auditing the Express Scripts PBM's work. These audits include reviews of quarterly rebate guarantees, annual reconciliation and payments, actual billing and allocation of rebates, administrative fees, claim payments, fraud and abuse standards, performance guarantees, pharmacy rebates, and even site visits.

38.     Thus, the Express Scripts PBM is "acting under" a federal officer when providing services to FEHBP plans. *See Goncalves*, 865 F.3d at 1245–49 (holding that administrator of healthcare benefits for FEHBP plans "acted under" OPM); *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 355–56 (5th Cir. 2019) (collecting cases).

**3.     OptumRx Acts Under the Direction of a Federal Officer in Performing its Contracts with the Veterans Health Administration.**

39.     OptumRx has "acted under" the direction of a federal officer in providing PBM services to federal health plans, including the Veterans Health Administration.

40.     The U.S. Department of Veteran Affairs is a federal executive department. 38 U.S.C. § 301; *see also Vasquez v. Ayudando Guardians, Inc.*, 2018 U.S. Dist. LEXIS 25068, at *5 (D.N.M. Feb. 15, 2018) (holding that a *Bivens* claim against the VA was barred by sovereign immunity as a claim against "the United States and its agencies"). The U.S. Department of Veteran Affairs, through the VHA, operates the largest integrated healthcare system in the United States.

41.     From 2009 through today, the VHA has hired OptumRx to provide pharmacy benefit management services. OptumRx serves as a third-party administrator, providing PBM services to assist the VHA in providing healthcare services to millions of veterans, their dependents, and their beneficiaries each year—including members in the State of Nevada. *See* 38 U.S.C. § 301. OptumRx provides PBM services to the VHA under the detailed requirements of its contract and lengthy Performance Work Statement (the VHA Contract).

42.     The relationship between OptumRx and the VHA is an unusually close one involving detailed regulation, monitoring, and supervision. The VHA dictates nearly every aspect of its relationship with OptumRx.

43.     The VHA has its own Pharmacy & Therapeutics Committee (P&T Committee) and has complete control over and constructs its own formulary. OptumRx does not decide what prescription drugs are covered or not covered on the VHA's formulary, nor does OptumRx make recommendations regarding formulary design.

44.     The VHA maintains complete control of claim adjudication and pricing logic.

45.     The VHA Contract requires weekly communication between the VHA OCC, Contractor, and other appropriate parties. The VHA and an OptumRx representative communicate nearly every day and meet in person quarterly.

46.     The VHA appoints a Contracting Officer Technical Representative in connection with its contract with OptumRx. The Contracting Officer Technical Representative is responsible for (i) monitoring contract performance and immediately reporting all problems related to it to the Contracting Officer, (ii) establishing and providing to the Contracting Officer a surveillance plan that will ensure receipt of the quantity and kinds of supplies or services required by the contract, (iii) ensuring that the Contractor complies with the defined Statement of Work or specifications included in the contract, and (iv) assisting the Contractor and Contracting Officer in interpreting technical requirements of the contract scope of work or specifications and submitting any differences of opinion on these matters to the Contracting Officer for resolution.

47.     The VHA subjects OptumRx to inspections to evaluate outcomes on a periodic basis.

48.     The U.S. Treasury pays OptumRx directly for the PBM services that OptumRx supplies to the VHA.

49.     OptumRx carries out functions that the VHA would otherwise have to provide itself under a contract that provides for unusually close oversight, involving detailed regulation, monitoring, and supervision from the VHA. OptumRx thus is "acting under" a federal officer when providing PBM services for the VHA. *See Arlington County*, 996 F.3d at 253 (removal on federal officer grounds is appropriate where defendants "are assisting DOD in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm") (quoting *Watson*, 551 U.S. at 153–54).

50.     In administering the formulary for the VHA and other federal plans, OptumRx at all times acted at the direction of the federal government.

**C.     The State's Claims Are Related to the Removing Defendants' Actions for the Federal Government.**

51.     The connection requirement is easy to meet—and it was recently made even easier.

52.     Before 2011, § 1442(a) allowed removal only "*for* any act under color of office." *DeFiore*, 85 F.4th at 557 n.6. In 2011, "Congress amended § 1442(a)(1) to allow removal by federal officers (and persons acting under them) of suits 'for *or relating to* any act under color of such office." *Id.* (citing Removal Clarification Act of 2011, Pub. L. No. 112-5 1, § 2(b)(1)(A), 126 Stat. 545). By amending the statute, "Congress broadened federal officer removal to actions 'not just *causally* connected, but alternatively *connected or associated*, with acts under color of federal office." *Id.* (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)). In other words, what had been a *causal* connection requirement is now simply just a *connection* requirement. *Id.*; *accord Arlington County*, 996 F.3d at 256 ("[T]his 'connection or association' standard is broader than the old 'causal nexus' test that we abandoned after the Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, expanded § 1442(a)(1) by inserting 'or relating to' into the third requirement for removal.").

53.     Express Scripts and OptumRx easily satisfy that standard.

54.     The State alleges harm from an "oversupply of opioids in Nevada." *E.g.*, Compl. ¶ 162. It blames Defendants for "increasing the availability of opioids" (*id.* ¶ 226) in Nevada, and for allegedly "favoring and/or failing to restrict the use of opioids in their formularies, . . . and in failing . . . to monitor their own claims data to prevent suspicious or inappropriate prescriptions of lethal opioids from reaching the community." Compl. ¶ 1. Those allegations necessarily include the thousands of prescription opioids dispensed to members of TRICARE, FEHBP, and VHA plans in the State of Nevada.

55.     For just those reasons, the Fourth Circuit previously held that a materially identical opioid complaint against Express Scripts satisfies the "related to" prong of federal officer removal:

> Arlington's claim that the ESI Defendants "did nothing to stem the flow of excess opioids into Arlington County" necessarily includes activity that is directly connected to the DOD contract, as the ESI Defendants were required to act in conformity with that contract. In other words, Arlington faults the ESI Defendants for filling certain opioid prescriptions and causing a public nuisance, but the ESI Defendants were required to fill those prescriptions to comply with their duties under the DOD contract because they had no ability to modify the contract. That does not mean that the ESI Defendants will prevail in the case. But it does mean that Arlington's claims "relate to" the ESI Defendants' governmentally-directed conduct. That is sufficient to satisfy the federal officer removal statute.

*Arlington County*, 996 F.3d at 257; *accord In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *5–6 ("[T]he Court finds that the Express Scripts Defendants have demonstrated a causal nexus between actions performed pursuant to the DoD contract and Plaintiffs' [opioid] lawsuits.").

56.     In an effort to evade those holdings, the State includes a purported disclaimer. According to the disclaimer, "under no circumstance is the State bringing this action against, or bringing an action or claim of any kind directed to, any federal officer or person acting under any office of the United States for or relating to any act under color of such office; nothing in this Complaint raises such an action, and to the extent that anything in the Complaint could be interpreted as potentially bringing an action against or directed to any federal officer or person acting under any office of the United States for or relating to any act under color of such office, then all such claims, actions, or liability, in law or in equity, are denied and disavowed in their entirety." Compl. ¶ 26; *see also id.* ¶ 111 ("The instant Complaint does not confer jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1442(a)(1). The State makes no allegations against '[t]he United States or any agency thereof or any office (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.' 28 U.S.C. § 1442(a)(1). Moreover, the State does not seek recovery for injuries caused by plans governed by the Department of Defense's TRICARE healthcare program or the Federal Employees Health Benefits Act (FEHBA).").

57.     The State's disclaimer is illusory and ineffective for at least three reasons.

58.     First, the disclaimer is incompatible with the State's claim of public nuisance. As the State acknowledges, a public-nuisance claim requires showing interference with a "right common to the general public." Compl. ¶ 203. The State therefore cannot exclude certain members of the general public—such as military service members and other members of federal health plans who received prescription opioids—from the scope of its public nuisance claim or the relief sought by the claim just to escape federal jurisdiction.

59.     Second, the disclaimer is irreconcilable with the State's many allegations that encompass prescription opioids dispensed to members of TRICARE, FEHBP, VHA, and other

federal plans. For example, the State alleges an "oversupply of opioids in Nevada." *E.g.*, Compl. ¶ 162. The State also repeatedly invokes *statewide* statistics about opioid use and abuse that encompass *all* who live in the State, *e.g.*, Compl. ¶¶ 16–21. Those statewide allegations and statistics include prescription opioids dispensed to federal plan members. Similarly, the State faults Defendants for allegedly failing to use their clients' opioid utilization data to combat the opioid crisis. *See, e.g.*, *id.* ¶¶ 152, 162, 198, 214. That utilization data necessarily encompasses thousands of prescription opioids dispensed to military service members, federal employees, and other federal plan members that Defendants provided services to at the behest of the DoD, VHA, and other federal plan sponsors.

60.     Accordingly, despite the purported disclaimer, the State's allegations are still "related to" the Removing Defendants' work for federal plans, which is all that is required to satisfy the connection element for federal officer removal jurisdiction. *DeFiore*, 85 F.4th at 557 n.6.

61.     Indeed, just like the State here, the plaintiffs in *Arlington County* and *In re Nat'l Prescription Opiate Litigation* argued that their public nuisance claims did not implicate Express Scripts' work for TRICARE. The Fourth Circuit and the district court overseeing the Opioid MDL rightly rejected that argument because the plaintiffs made sweeping allegations—just like the State does here—of an "oversupply" of opioids in their jurisdictions that necessarily included prescriptions dispensed to TRICARE members. *Arlington County*, 996 F.3d at 256–57; *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *5–6.

62.     Third, the State's purported disclaimer cannot be squared with the relief the State seeks. It seeks abatement and damages for the *entire* alleged "opioid epidemic." *E.g.*, Compl. ¶ 272, Prayer for Relief ¶¶ 3, 5, 6. The alleged opioid epidemic includes alleged harms caused by prescription opioids dispensed to members of TRICARE, FEHBP, VHA, and other federal plans. For example, the State seeks to recover "the costs of hospital services, healthcare, emergency medical services, social services, prevention, treatment, education, intervention, and overhead expenses." Compl. ¶ 239. The State does not—and cannot—carve out hospital costs, emergency medical costs, treatment costs, and other costs connected to prescription opioids dispensed to members of federal plans. Nor does the State assert that military service members, veterans, and

other members of federal health plans will be unable to receive treatment under the abatement plan it seeks.

63.     The disclaimer is therefore ineffective at establishing the absence of a connection or association between the Defendants' alleged misconduct and their work for the federal government. Were there any doubt, "[i]n assessing whether a causal nexus exists," this Court must "credit the defendant's theory of the case." *DeFiore*, 85 F.4th at 557 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014)).

64.     In short, despite its purported disclaimer, the State continues to advance claims "relating to"—*i.e.*, connected or associated with—the Removing Defendants' work for TRICARE, VHA, and FEHBP plans. *See Arlington County*, 996 F.3d at 256–57; *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *5–6.

**D.     Removing Defendants Have Colorable Federal Defenses to the State's Claims.**

65.     The final removal requirement is the "low bar" of establishing a "colorable federal defense." *DeFiore*, 85 F.4th at 560. A defense is "colorable" so long as it is not "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Id.* "One colorable federal defense against one asserted claim" satisfies this requirement. *Id.*

66.     The Removing Defendants have at least two colorable federal defenses: a government contractor defense and a preemption defense. The Removing Defendants reserve the right to assert additional federal defenses, including those not stated in this Notice of Removal.

**1.     Government Contractor Defense**

67.     The federal government contractor defense applies when (1) "the United States approved reasonably precise specifications;" (2) the contractor's work product "conformed to those specifications;" and (3) the supplier warned the United States about the risks or exposures "in the use of the equipment known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). The defense protects government contractors from state tort liability that may befall them should they carry out a federal contract. In other words, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington County*, 996 F.3d at 255 (citation omitted).

68.     Here, the government contractor defense is available to the Removing Defendants.

69.     Express Scripts assisted the federal government by providing healthcare services pursuant to highly precise directives contained in the lengthy TRICARE Contract with the DoD and pursuant to contracts with FEHBP plans under OPM's specific requirements and supervision. Express Scripts' performance conformed to the specifications in the TRICARE Contract and FEHBP contracts. And Express Scripts did not have any greater awareness than the federal government did of the dangers of prescription opioids.

70.     Among other things, Express Scripts' contract with the DoD required exclusive use of the DoD formulary and implementation of the government's Prescription Restriction Program, both of which conflict with the core state-law duties asserted by the State. There is a similar conflict between the asserted state-law duties and Express Scripts' obligations under its contracts with FEHBP plans. These conflicts make it impossible for Express Scripts to comply with the state-law duties alleged by the State while also fulfilling its obligations under its federal contracts.

71.     The Fourth Circuit and the federal district court overseeing the Opioid MDL have previously concluded that these factual assertions are sufficient for Express Scripts to state a colorable government contractor defense in opioid cases that supports removal under the federal officer removal statute. *See Arlington County*, 996 F.3d at 255 (Express Scripts defendants "met the jurisdictional requirement of possessing a 'colorable federal defense.'"); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *7.

72.     Likewise, OptumRx can assert the federal contractor defense because the State's theory of liability is predicated on OptumRx's alleged failure to implement a specific formulary, specific opioid utilization limits, or specific restrictions on opioids different from those mandated by OptumRx's VHA contract.

73.     Based on the State's allegations, OptumRx cannot simultaneously comply with its obligations under its VHA contract and comply with Nevada law, making a federal contractor defense colorable. *See Arlington County*, 996 F.3d at 255.

### 2.      Preemption

74.      Express Scripts also has a colorable preemption defense under at least two federal statutes: the TRICARE statute and FEHBA.

75.      The TRICARE statute provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g. The statute expressly preempts any state laws to the extent that the Secretary of Defense determines that those laws are "inconsistent with a specific provision of the contract" or that "preemption . . . is necessary to implement or administer the provisions of the contract or to achieve any other important Federal interest." 10 U.S.C. § 1103(a). The Secretary has determined that such preemption is necessary. *See* 32 C.F.R. §§ 199.17(a)(7), 199.21(o).

76.      The State's theory of liability against Express Scripts is that it allegedly failed to implement specific formulary positioning for prescription opioids, specific utilization management rules for prescription opioids, specific controls on dispensing by the ESI Mail Pharmacy, and/or other restrictions on prescription opioids that differ from those that DoD mandated for the TRICARE program. In other words, the conduct complained of is conduct Express Scripts was required to carry out to comply with the language of the TRICARE Contract as well as the TRICARE statute, regulations, and policies.

77.      Multiple courts have previously concluded that these factual assertions are sufficient for Express Scripts to state a colorable preemption defense to support removal under the federal officer removal statute. *See Arlington County*, 996 F.3d at 256 ("[U]nder the well-established preemption doctrines applicable to such claims, it is plausible that the ESI Defendants have a valid preemption defense."); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *8 ("[T]he Express Scripts Defendants have a colorable argument that the DoD contract preempts the Plaintiffs' state law claims."); *see also Grider*, 2009 U.S. Dist. Lexis 107515, at *10 (holding in a non-opioid case that Express Scripts advanced a colorable preemption defense based on its TRICARE Contract).

78.     FEHBA also supports a preemption defense for the Express Scripts PBM. It contains an express preemption provision displacing any state laws relating to coverage or benefits afforded by FEHBA plans. 5 U.S.C. § 8902(m)(1).

79.     Here, FEHBA preempts the State's claims against the Express Scripts PBM because the State seeks to interfere with uniform FEHBP plan administration by trying to dictate the terms of FEHBP plans with respect to coverage of, and benefits afforded for, prescription opioids.

## GROUNDS FOR FEDERAL-QUESTION REMOVAL

80.     Removal is also proper under 28 U.S.C. §§ 1441 and 1331 because the State's claims necessarily present substantial and disputed questions of federal law.

81.     This Court has removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and it has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.

82.     Even when state law creates a cause of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313).

83.     As set forth below, all four requirements are met in this case. Certain of the State's theories of liability against the Removing Defendants, as pleaded in the Complaint, necessarily turn on substantial and disputed questions of federal law: whether the Removing Defendants owed and

breached alleged duties under the federal Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, and its implementing regulations.

84.     Although the Complaint alleges only state-law causes of action, its two negligence counts each require the existence of a duty. In at least one of those counts, the State explicitly alleges that the mail-order pharmacies owed and breached duties "under the CSA." Compl. ¶ 284. Indeed, the State plainly identifies federal law as the source of a duty that it alleges the Removing Defendants breached.[2] *See, e.g.*, Compl. ¶ 112 ("In this Complaint, Plaintiff cites federal statutes and regulations. Plaintiff does so to state the duty owed under Nevada tort law . . . ."); *id.* ¶ 137 ("ESI and UHG/Optum are required to comply with the Controlled Substances Act ('CSA') . . . ."); *id.* ¶ 284 ("PBM Defendants failed to perform statutory and regulatory obligations under the CSA and Nevada's Controlled Substances Act, which were enacted to promote safety and to prevent exactly the type of harm that occurred as a result of PBM Defendants' failures."); *id.* ¶ 285 ("PBM Defendants failed to maintain effective controls against oversupply and diversion as required under 21 C.F.R. § 1301.74(b)."); *id.* ¶ 286 ("PBM Defendants failed to report suspicious orders to law enforcement and perform due diligence prior to filling orders.").

85.     The federal question presented by the State's claims is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

86.     *First*, the State's state-law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law." *Grable*, 545 U.S. at 313. As pleaded, at least certain of the State's claims against the Removing Defendants require it to establish that the Removing Defendants breached duties under federal law by failing to prevent diversion and report suspicious prescribers, including in the State of Nevada. Therefore, the Complaint necessarily raises a federal issue, namely, whether the Removing Defendants violated the CSA.

---

[2] As PBMs, Express Scripts PBM and OptumRx are not subject to or required by law to comply with the federal CSA. By quoting the State's allegations here, Removing Defendants do not concede that the CSA applies to PBMs or imposes any duty on them.

87.     *Second*, this federal issue is "actually disputed" because the parties disagree as to whether the Removing Defendants owed and violated duties under the CSA. Indeed, this federal issue is a "central point of dispute." *Gunn*, 568 U.S. at 259.

88.     *Third*, the federal issue presented by the State's claims is "substantial." An issue is substantial if, for example, it "requires an interpretation of a federal statute." *Tri-Dam v. Frazier*, 2023 U.S. App. LEXIS 10652, at *4–5 (9th Cir. May 2, 2023) (quotations omitted). The State's theories of liability necessarily require this Court to "interpret [] . . . a federal statute" to determine the scope of the Removing Defendants' obligations under the CSA. Those theories "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to 'the federal system as a whole.'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014) (citation omitted). Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) (cleaned up).

89.     *Fourth*, the federal issue here is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against pharmacies, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—DEA— applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 454 U.S. at 313.

90.     The State goes to great lengths to disclaim federal-question jurisdiction (Compl. ¶¶ 25; 110)—as if that is something it can disclaim. But as the State concedes, the Court cannot resolve certain state-law claims without first resolving federal questions. *See* Compl. ¶¶ 7 n.3; 112; *see also Brant v. Shea Mortg., Inc.*, 2011 U.S. Dist. LEXIS 40924, at *8 (D. Nev. Mar. 30, 2011) ("Under

the artful pleading doctrine, a plaintiff 'may not avoid federal jurisdiction by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law.'") (quoting *Olguin v. Inspiration Consol. Copper Co.*, 740 F..2d 1468, 1472 (9th Cir. 1984)). The State cannot have it both ways—it cannot claim, on the one hand, that the federal CSA created duties that the PBMs breached (*see* Compl. ¶¶ 137, 284), while also claiming that its citations to the federal CSA "are for reference only and to state the duty owed under Nevada tort law, not to allege an independent federal cause of action and not to allege any substantial federal question." *Id.* ¶¶ 7 n.3; 112. The Court must necessarily resolve substantial federal questions if it is to adjudicate state-law tort law claims predicated on a duty created by the federal CSA. *E.g.*, *id.* ¶ 112 (alleging that negligence claims require the existence of a duty).

91.     In sum, removal of this action is appropriate because the State's "state-law claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

<strong>VENUE</strong>

92.     Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the District Court for Clark County, Nevada, the court from which this case was removed. *See* 28 U.S.C. § 1442(a) ("A civil action . . . that is commenced in a State court . . . may be removed . . . to the district court of the United States for the district and division embracing the place wherein it is pending.").

<strong>REMOVAL PROCEDURES</strong>

**A.     Notice of Removal Is Timely.**

93.     Removal notices may be filed within 30 days of the date upon which the removing defendant was served with process. 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999).

94.      The State filed its Complaint on January 26, 2024, and served the Removing Defendants on February 13, 2024.

95.     This Notice of Removal, filed on March 12, 2024, is within 30 days of February 13 and is therefore timely filed under 28 U.S.C. § 1446(b)(1).

**B.     All Served Defendants Consent to Removal.**

96.     The federal officer removal statute does not require other defendants to consent to removal. *See Durham*, 445 F.3d at 1253 ("Whereas all defendants must consent to removal under section 1441, . . . a federal officer or agency defendant can unilaterally remove a case under section 1442 . . . .") (citation omitted).

97.     In any event, all served defendants (Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Medco Health Solution, Inc., UnitedHealth Group Incorporated, Optum, Inc., OptumRx, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., The Lewin Group, Inc., Elevance Health, Inc., CarelonRx, Inc., and Carelon Insights, Inc.) do consent to removal on both federal-officer and federal-question grounds.

**C.     Written Notice of Removal.**

98.     In accordance with 28 U.S.C. § 1446(d), Removing Defendants will give written notice of the filing of this Notice of Removal to all adverse parties of record in this matter and will file a copy of this Notice with the clerk of the state court.

**NO WAIVER**

99.     Nothing in this notice should be interpreted as a waiver or relinquishment of any of Removing Defendants' rights to assert any and all defenses or objections.

100.    If there are any questions that arise as to the propriety of removal, the Removing Defendants respectfully request the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

101.    The Removing Defendants reserve the right to amend or supplement this Notice.

/ / /

/ / /

/ / /

/ / /

# CONCLUSION

For these reasons, the Removing Defendants give notice of removal of this case from the District Court for Clark County, Nevada to the United States District Court for the District of Nevada.

DATED: March 12, 2024.

/s/ Ryan T. Gormley
Stephen W. Mooney, Bar No. 9870
Ryan T. Gormley, Bar No. 13494
WEINBERG, WHEELER, HUDGINS,
   GUNN & DIAL, LLC
6385 South Rainbow Blvd., Suite 400
Las Vegas, NV 89118

*Attorneys for Defendant*
*OptumRx, Inc.*

/s/ Todd L. Bice
Todd L. Bice, Bar No. 4534
Emily A. Buchwald, Bar No. 13442
PISANELLI BICE, PLLC
400 S. 7th Street, Suite 300
Las Vegas, NV 89101
(702) 214-2100
tlb@pisanellibice.com
eab@pisanellibice.com

Michael Lyle (*PHV forthcoming*)
Jonathan Cooper (*PHV forthcoming*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendants Express Scripts, Inc.,*
*ESI Mail Pharmacy Service, Inc., Express*
*Scripts Pharmacy, Inc., Medco Health*
*Solutions, Inc.*

# INDEX OF EXHIBITS

- Ex. A: State Court Filings

- Ex. B: TRICARE Contract

**DEMAND FOR JURY TRIAL**

Defendants Express Scripts, Inc., Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., OptumRx, Inc., Elevance Health, Inc., CarelonRx, Inc., and Carelon Insights, Inc., demand a trial by jury on all issues so triable.

DATED: March 12, 2024.

*/s/ Ryan T. Gormley*
Stephen W. Mooney, Bar No. 9870
Ryan T. Gormley, Bar No. 13494
WEINBERG, WHEELER, HUDGINS,
   GUNN & DIAL, LLC
6385 South Rainbow Blvd., Suite 400
Las Vegas, NV 89118

*Attorneys for Defendant
OptumRx, Inc.*

*/s/ Todd L. Bice*
Todd L. Bice, Bar No. 4534
Emily A. Buchwald, Bar No. 13442
PISANELLI BICE, PLLC
400 S. 7th Street, Suite 300
Las Vegas, NV 89101
(702) 214-2100
tlb@pisanellibice.com
eab@pisanellibice.com

Michael Lyle (*PHV forthcoming*)
Jonathan Cooper (*PHV forthcoming*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendants Evernorth Health,
Inc., Express Scripts, Inc., Express Scripts
Administrators, LLC, ESI Mail Pharmacy
Service, Inc., Express Scripts Pharmacy, Inc.,
Express Scripts Specialty Distribution
Services, Inc., Medco Health Solutions, Inc.*

[signatures continued on next page]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Pat Lundvall*
Pat Lundvall, Bar No. 3761
MᴄDᴏɴᴀʟᴅ Cᴀʀᴀɴᴏ, LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
(702) 873-4100
plundvall@mcdonaldcarano.com

Dell P. Chappell (*PHV forthcoming*)
Nᴇʟsᴏɴ Mᴜʟʟɪɴs Rɪʟᴇʏ &
Sᴄᴀʀʙᴏʀᴏᴜɢʜ LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
(803) 255-9428
dell.chappell@nelsonmullins.com

*Attorneys for Defendants*
*Elevance Health, Inc., CarelonRx, Inc.,*
*and Carelon Insights, Inc.*

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on March 12, 2024, a true and correct copy of the foregoing **JOINT**

3   **NOTICE OF REMOVAL** and **DEMAND FOR JURY TRIAL** was served by e-service, in

4   accordance with the Electronic Filing Procedures of the United States District Court, to the

5   following:

6   Robert T. Eglet
    Robert M. Adams
7   Cassandra S.M. Cummings
    EGLET ADAMS EGLET HAM HENRIOD
8   400 S. Seventh St., Suite 400
    Las Vegas, NV 89101
9   eservice@egletlaw.com

10  Aaron D. Ford
    Ernest Figueroa
11  Mark J. Krueger
    STATE OF NEVADA, OFFICE OF THE ATTORNEY
12  GENERAL, BUREAU OF CONSUMER PROTECTION
    100 North Carson Street
13  Carson City, NV 89701-4717
    mkrueger@ag.nv.gov

14
    *Attorneys for Plaintiff*
15  *State of Nevada*

16

17                          */s/ Ryan T. Gormley*_____

18

19

20

21

22

23

24

25

26

27

28