# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| State of Nevada,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Optum, Inc *et al.*,<br><br>　　　　Defendants. | Case No. 2:24-cv-00493-RFB-DJA<br><br>**ORDER** |

Before the Court is Plaintiff's Motion to Remand to State Court. For the following reasons, the Court Grants the motion.

## I.    PROCEDURAL HISTORY

On March 12, 2024, Removing Defendant's OptumRx, Inc., Express Scripts., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc. removed this case from the Eighth Judicial District Court to the U.S. District Court for the District of Nevada. ECF No.1. On March 15, 2024, Plaintiff filed a Motion to Remand to State Court. ECF No. 8. The motion was fully briefed on April 5, 2024. On October 22, 2024, the Court held a Motion Hearing on Plaintiff's Motion to Remand. ECF No. 57.

The Court's Order follows.

## II.    FACTUAL ALLEGATIONS

The following facts are alleged in the operative Complaint.

Plaintiff, the State of Nevada, initiated this action against Defendants to abate the public nuisance caused in part by the role of pharmacy benefit managers, *inter alia*, in worsening the opioid epidemic in Nevada.

### i.  UHG/Optum Defendants

Defendant United Health Group, Inc. ("UHG") operates through two connected divisions: Optum and UnitedHealthcare. Defendant Optum, Inc. ("Optum") is a wholly owned subsidiary of UHG. Optum manages other subsidiaries that administer UHG's pharmacy benefits, including

OptumRx, Inc. ("OptumRx"), which operates as the pharmacy benefit manager ("PBM") for UHG. Defendants OptumInsight, Inc., OptumInsight Life Sciences, Inc., and the Lewin Group, Inc., are referred to collectively as "OptumInsight." OptumInsight analyzed data and other information concerning opioid prescription claims data and health plans' opioid utilization for use in its research and consulting efforts.

Plaintiff alleges that UHG, OptumRx Holdings, LLC and Optum are directly involved in the conduct and control of OptumInsight's and OptumRx's operations, management and business decisions. Therefore, Plaintiff collectively refers to UHG, OptumRx, and OptumInsight as "UHG/Optum." UHG/Optum is named as a Defendant in its capacity as (1) PBM, (2) data, analytics, consulting, and research provider, and (3) mail-order pharmacy.

      ii.     ESI Defendants

Defendant Evernorth Health, Inc. ("Evernorth"), formerly known as Express Scripts Holding Company, is the immediate or indirect parent of pharmacy, PBM, research/analytics subsidiaries that operate throughout Nevada. Defendant Express Scripts, Inc. ("Express Scripts") is the immediate or indirect parent of pharmacy and PBM subsidiaries that operate throughout Nevada. Defendant Express Scripts Administrators, LLC provided the PBM services in Nevada during the relevant period. Defendant Medco Health Solutions, Inc. ("Medco") merged with Express Scripts in 2012. Prior to the merger, Medco provided the at-issue PBM and mail-order services in Nevada. Defendant ESI Mail Pharmacy Service, Inc. is a wholly owned subsidiary of Defendant Evernorth and provided mail-order pharmacy services in Nevada. Defendant Express Scripts Pharmacy, Inc. also provided mail-order pharmacy services in Nevada. Defendant Express Scripts Specialty Distribution Services, Inc. is a wholly owned subsidiary of Evernorth and provided or assisted in providing PBM services.

The State alleges that Evernorth and Express Scripts, Inc. control Express Scripts Administrators, ESI Mail Pharmacy Service, Medco, Express Scripts Pharmacy, and Express Scripts Specialty Distribution Services' operations, management, and business decisions. Therefore, these Defendants are collectively referred to as "ESI." The ESI Defendants are also sued in their capacity as (1) PBM, (2) data, analytics, and research provider, and (3) mail-order

pharmacy.

iii.   Carelon Defendants

Defendant Elevance Health, Inc. ("Elevance") is the Blue Cross and Blue Shield licensee for Nevada and offers PBM services through Defendant CarelonRx, its wholly owned subsidiary. Defendant Carelon Insights, Inc., analyzes data and other information concerning opioid prescription claims data and health plans' opioid utilization for use in its research and consulting efforts.

The State alleges that Elevance controls CarelonRx and Carelon Insight, Inc.'s operations, management, and business decisions. Therefore, these Defendants are referred to collectively as "Carelon." Carelon is named as a defendant in its capacities as a (1) PBM and (2) data, analytics, and research provider.

B.   Definitions

Pharmacy benefit managers (PBMs) are entities hired to administer and manage prescription drug benefits on behalf of various health benefits programs, including both commercial and government programs. PBMs administer prescription drug benefits for health plans, purchase drugs from manufacturers on behalf of those plans, and negotiate payment terms for pharmacies that dispense the drugs to patients.

PBMs create lists of drugs that are selected to be covered by health plans. These lists are known as "formularies." PBM formularies are divided into tiers which establish out-of-pocket costs consumers are to pay for a chosen drug. The first tier of a PBM drug formulary will be less expensive for the consumer compared to the higher tiers.

C.   Allegations

PBMs, such as those named as Defendants in this action, influence drug utilization by (1) placing preferred drugs on lower tiers of their formularies and (2) implementing, or failing to implement, utilization management tools which allow PBMs to (a) limit the quantity of drugs dispensed, (b) require prior authorization before dispensing specific drugs, and (c) implement "step edits" which require patients to try safer medication before progressing to more dangerous drugs.

Defendants in this action incentivized their clients to adopt Defendants' standard

formularies by implementing financial consequences for deviating from them. Plaintiff alleges that by incentivizing the use of their standard formularies as well as their utilization management tools, Defendants dictated the consumer cost and any restrictions placed on prescription opioids. As a result, by way of formularies with opioids placed on lower tiers and few restrictions, Defendants ensured opioid sales to their drug manufacturer partners. In this way, Plaintiff alleges, Defendants worked to increase opioid utilization in order to maximize profit and therefore directly contributed to the dispensing of more opioid pills to individuals than were needed for legitimate medical purposes. Simultaneously, Defendants allegedly falsely represented to their clients, patients, and the public that they design drug formularies and programs in a manner that is cost effective and promotes the safe use and appropriate prescription of opioids.

Additionally, Plaintiff brings claims against Defendants for failing to prevent diversion of prescription opioids into the illegal market by, *inter alia*, monitoring and reporting suspicious activity. Specifically, Plaintiff alleges that Defendants ESI and UHG/Optum knowingly allowed widespread diversion to occur, in violation of Nevada law, by: (1) failing to adequately use data available to them to identify doctors who were writing suspicious prescriptions; (2) failing to analyze (a) the number of opioid prescriptions filled in a geographical area relative to the population of the community, (b) the increase in opioid sales relative to past years, (c) the number of opioid prescriptions filled relative to other drugs, and (d) the increase in annual opioid sales relative to the increase in annual sales of other drugs; and (3) failing to conduct adequate internal or external audits of their opioid sales.

Ultimately, Plaintiff claims that Defendants were, or should have been, fully aware that the quantity of opioids being distributed was untenable and in many areas was so high that illegal diversion was the only logical explanation, yet Defendants did not take meaningful action to investigate or to ensure that they were complying with their duties and obligations under the law with regard to controlled substances.

### III.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Corral v. Select Portfolio Servicing, Inc.,

878 F.3d 770, 773 (9th Cir. 2017) (internal citation omitted). A state court action can only be removed if it could have originally been brought in federal court. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). A federal district court has original jurisdiction under federal question and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. These removal statutes are strictly construed against removal. Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The Court is constitutionally required to raise issues related to federal subject matter jurisdiction, and may do so sua sponte. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

A removing party must demonstrate that an action falls within the categories of federal subject matter jurisdiction to avoid remand. See Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33-34, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002). One such basis for removal arises for federal officers, who are permitted to remove civil actions filed against them in state court if "the United States or any agency thereof or any officer (or any person acting under that officer)" is sued "in an official or individual capacity, for or relating to any act under color of such office . . .." 28 U.S.C. § 1442(a)(1). While § 1442 is colloquially described as "federal officer removal," as the statute explains, it may also extend to private persons under certain circumstances. Id.

To remove an action to federal court pursuant to federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), a private person must establish: "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense." Cnty. of San Mateo v. Chevron Corp., 32 F.4th 733, 755 (9th Cir. 2022) (hereinafter "Mateo III") (citing Riggs v. Airbus Helicopters, Inc., 939 F.3d 981, 986-87 (9th Cir. 2019)). To establish a sufficient causal nexus, a private person must demonstrate "(1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." Id. (citing Goncalves ex rel. Goncalves v. Rady Child.'s Hosp.

1  San Diego, 865 F.3d 1237, 1244-50 (9th Cir. 2017)). Federal courts are generally directed to
2  interpret § 1442 broadly in favor of removal. Goncalves, 865 F.3d at 1244. However, Defendants
3  seeking removal "still bear the burden of proving by a preponderance of the evidence that the
4  colorable federal defense and causal nexus requirements for removal are factually supported."
5  Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 684 (9th Cir. 2022) (quoting Lake v. Ohana
6  Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021).

**IV.    DISCUSSION**

Plaintiff argues that this matter should be remanded to state court for three primary reasons: (1) there is no basis to remove actions brought by the attorney general to enforce state law causes of action; (2) there is no federal-question jurisdiction over the states claims; (3) Removing Defendants failed to meet their burden to establish federal officer jurisdiction. Additionally, Plaintiff argues that Defendant's should be sanctioned for omitting Ninth Circuit opinions directly adverse to their arguments in Defendant's Notice of Removal. Defendants argue that removal was proper on federal officer grounds, and federal question grounds. Additionally, Defendants argue that the Court should reject Plaintiff's request for sanctions.

**A.    Removal of Civil Actions Brought by State Attorneys General**

In Nevada v. Bank of Am. Corp., the Ninth Circuit held that in a *parens patriae* action brought by the Attorney General in state court, solely alleging state law causes of action, brought to protect Nevada Residents, the "claim of sovereign protection from removal arises in its most powerful form." 672 F.3d 661, 676. (quoting West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 174-76 (4th Cir. 2011) (internal quotation marks omitted.) Considerations of comity make federal courts reluctant to snatch cases which a state has brought from the courts of that state, unless some clear rule demands it. Id. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 20, 103 S. Ct. 2842, 77 L. Ed. 2d 420 (1983). Removing a state's action from its own courts must "serve [] an overriding federal interest." Id. See McGraw, 646 F.3d at 178.

In this instance, the Nevada Attorney General pursuant to its *parens patriae* powers brought this matter in state court alleging state law causes of action. While Defendants contend

that Plaintiff's negligence causes of action refer to Defendants' duties under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*. In their complaint Plaintiff explicitly asserts that they cite to federal statutes and regulations for the sole purpose of stating the duty owned under Nevada law to the residents of Nevada. Furthermore, Plaintiff asserts that their cites to federal statutes and regulations do not allege an independent federal cause of action nor substantial federal question.

The Court finds that Defendants have not adequately plead that there is an overriding federal interest served by the removal of this action from state court.

### B. Federal Question Jurisdiction

The Supreme Court has held that a federal issue embedded in a state-law claim may give rise to federal question jurisdiction if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in a federal court without disrupting the federal-state balance approved by congress. Gunn v. Minton, 568 U.S. 251, 258, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013). (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 318 (2005)). Where all four of these requirements are met, jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum. Id.

Here, Defendants argue that Plaintiff's negligence *per se* claims meet all four factors of the Grable test because Plaintiff alleges Defendants were negligent when they breached duties under the federal CSA to monitor and report suspicious opioid orders. Defendants contend that the state must establish that Defendants breached alleged duties under federal law, thus federal law is a "necessary presence" in the states claim. Additionally, Defendants argue that they have federal defenses that should be adjudicated in federal court. Plaintiff argues that their reference to the CSA is merely illustrative of the fact that Defendants breached a duty created by federal law, in support of Plaintiff's state law claims. Plaintiff asserts that in addition to the fact that their Complaint raises only state law claims, it also includes a disclaimer which disclaims all claims and damages arising out of Defendants' federal work.

Applying the factors established in Grable, the Court finds that Plaintiff's reference to the

CSA does not give rise to federal question jurisdiction. First, Plaintiff's state law claims are independently supported by Nevada state law and do not turn on the construction of federal law. Thus, no federal issue is necessarily raised. Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996). Second, there are no federal statutes in dispute in this case. While Plaintiff references the CSA, all claims alleged in the suit are state law claims. The use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim. Thus, there are no actually disputed federal statutes at issue. Nevada v. Bank of America Corp., 672, F.3d 661, 675 (9th Cir. 2012). Third, this case does not raise significant questions regarding the interpretation or validity of a federal statute nor challenge the functioning of a federal agency or program. Thus, this case does not have a substantial nature of federal law. City of Oakland v. BP PLC, 969 F.3d 895 (2020). Fourth, Claims like negligence, public nuisance, and violations of state specific laws should be decided by a State Court. Thus, allowing this case to proceed in federal court would aggravate the balance of labor between federal and state courts. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 318 (2005) (quoting Merrell Dow Pharmaceuticals Inc. v. Thompson 478 U.S., at 811–812, 106 S.Ct. 3229.)

Defendants assert that the federal defenses they raise make removal proper in this instance. A case "arises under" federal law within the meaning of 28 U.S.C. §1331 only if a federal question appears on the face of plaintiff's well-pleaded complaint. Original jurisdiction is lacking even if a defense is alleged to be based exclusively on federal law. Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1371 (9th Cir. 1987) (see Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)). A defendant cannot obtain removal jurisdiction merely by asserting a federal defense. Id (see Hunter v. United Van Lines, 746 F.2d 635, 639 (9th Cir.1984)).

The Court finds that the instant matter does not meet the Grable requirements for establishing federal question jurisdiction and Defendants' argument that their federal defenses require this case be litigated in federal court fails.

### C. Federal Officer Jurisdiction

To invoke federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), a plaintiff must

establish: (1) it is a person within the meaning of the statute; (2) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims; and (3) it can assert a colorable federal defense. Riggs v. Airbus Helicopters, Inc., 939 F.3d 981, 986–87 (9th Cir. 2019). Unlike removal under 28 U.S.C. § 1441, which is construed narrowly, federal officer removal must be liberally construed. Although removal rights under the federal officer removal statute are much broader than those under 28 U.S.C. § 1441, the statute's broad language is not limitless. Doe v. Cedars-Sinai Health Sys., 106 F.4th 907, 910 (9th Cir. 2024). Defendants seeking removal "bear the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction are factually supported." Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021) (cleaned up). A private firm's compliance or noncompliance with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal official, even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. Watson v. Philip Morris Cos., 551 U.S. 142, 145 (2007). "A contrary determination would expand the statute's scope considerably, potentially bringing within it state-court actions filed against private firms in many highly regulated industries." Id. A private person's "acting under" must involve an effort to assist, or to help carry out, the federal superior's duties or tasks. Id. This generally involves a "delegation of legal authority" from a federal entity. Doe v. Cedars-Sinai Health Sys., 106 F.4th 907, 916 (9th Cir. 2024).

In this instance, Defendants argue that removal is proper on federal officer grounds. Defendants contend that they were "acting under" a federal officer when providing services to federal employees and under the supervision of various federal agencies such as the Department of Defense ("DoD"), and Department of Veteran Affairs ("VA"). Plaintiff contends Defendants fail to demonstrate that removing Plaintiff's case from Nevada state courts serves an overriding federal interest, or that a clear rule demands removal.

The Court finds that Defendants' status as corporations makes them persons under the applicable law which satisfies the first factor in Riggs.

Next, the court examines the causal nexus between Defendants' actions taken pursuant to

1    a federal officer's directions and Plaintiff's claims. Plaintiff alleges that residents within its
2    jurisdiction were injured by excessive prescriptions of opioids attributable to the formularies and
3    utilization management of Express Scripts PBM and OptumRx, as well as the dispensing practices
4    of their affiliated mail-order pharmacies. Defendants contend that the population Plaintiff alleges
5    was injured by Defendants' actions includes members of the Federal Employee Health Benefit
6    Plan ("FEHBP"), TRICARE, AND VA healthcare plans. Defendants assert that the DoD specifies
7    the manner in which Express Scrips must administer its formulary for TRICARE members, and
8    the requirements and restrictions Express Scripts must adhere to when adjudicating claims by
9    TRICARE members for prescription opioids. Defendants also assert that the VA dictates OptumRx
10   formularies as well as the requirements and restrictions for adjudicating VA member claims.
11   Similarly, defendants assert that OPM imposes rules and guidelines governing the formularies that
12   Express Scripts PBM administers for FEHBP plans. Defendants argue that the aforementioned
13   government involvement constitutes a causal nexus because the harm Plaintiff alleges is associated
14   with the tasks Defendants carry out for the federal government. Plaintiff argues that Defendants'
15   contracts with the government are arm's length business agreements, only governing Defendants'
16   conduct within the purview of the agency plans. Furthermore, Plaintiff asserts that their claims do
17   not arise from those contracts, or any service contracts with the federal government.

18         The prescription drug market is highly monitored and governed by various regulations
19   promulgated by federal agencies. Defendants were required to adhere to the policies and
20   procedures of federal government agencies when establishing their formularies and pharmacy
21   benefit contracts. Additionally, Defendants were subject to annual audits conducted by federal
22   agencies ensuring Defendants' actions related to members of federal healthcare plans complied
23   with federal regulations. Merely complying with federal laws, policies or regulations does not
24   constitute "acting under" a federal official for the purposes of federal officer removal. Watson v.
25   Philip Morris Cos., 551 U.S. 142, 145. Thus, Defendants compliance with federal regulations and
26   monitoring does not meet the "acting under" requirement for federal officer jurisdiction.

27         Furthermore, Defendants fail to meet the causal nexus requirement. The causal nexus
28   requirement is satisfied if the Defendant shows that the challenged acts occurred because of what

the Defendant was asked to do by the federal government. DeFiore v. SOC LLC, 85 F.4th 546, 557 (9th Cir. 2023). In this instance, the federal government only provided regulations as to Defendants' actions related to members of federal healthcare plans. Plaintiff does not plead that the regulations and monitoring imposed by the federal government on the development of formularies and pharmacy benefits for members of federal healthcare plans caused Defendants to engage in the alleged harm to Nevada citizens who are not members of federal healthcare plans. Plaintiff's complaint challenges Defendant's role in fueling the opioid crisis in Nevada and expressly disclaims claims and damages arising from federal transactions.

Next, the Court examines Defendants colorable federal defenses. Defendants assert that they will raise a government contractor defense, TRICARE preemption defense, FEHBA preemption defense, and CSA defense. In City & County of Honolulu v. Sunoco LP, the Ninth Circuit held that a colorable federal defense as required for federal officer removal must be a non-frivolous defense that arises out of the defendant's official duties. 39 f.4th 1101 (2022). A plausible federal defense does not need to be meritorious or ultimately successful, but it must be plausible and legitimate. Id. The Court finds that Defendants have at least one colorable federal defense.

While Defendants meet the first and third factors for federal officer removal, they fail to meet the "acting under" requirement or establish a casual connection between their government-controlled activity and plaintiff's claims. Thus, the Court finds that there is no basis for federal officer removal.

D. Disclaimer

Courts in the Ninth Circuit have recognized that when the federal officer removal statute is at issue, a plaintiff may expressly waive claims that would give rise to potential federal defenses. California v. Express Scripts, Inc., 2024 U.S. Dist. LEXIS 34507. See, e.g. Fisher v. Asbestos Corp., 2014 U.S. Dist. LEXIS 105207, 2014 WL 3752020 (C.D. Cal. July 30, 2014); Lockwood v. Crane Corp., 2012 U.S. Dist. LEXIS 57986, 2012 WL 1425157 (C.D. Cal. Apr. 25, 2012). If a plaintiff includes a waiver, it is sufficient to eviscerate grounds for removal. Id. See Hukkanen v. Air and Liquid Systems Corporation, 2017 U.S. Dist. LEXIS 49709, 2017 WL 1217075. at *2 (C.D. Cal. March 31, 2017).

In this instance, Plaintiff argues that the disclaimer included in the complaint is unequivocal as it expressly waives all claims and damages stemming from Defendants' federal work. Defendants argue that Plaintiff's disclaimer is illusory and too generalized because Plaintiff's public nuisance claim requires "an unreasonable interference with a right common to the general public." Defendants assert that Plaintiff's allegations regarding harm to Nevada residents includes all residents, some of whom are members of federal healthcare plans.

In California v. Eli Lilly & Co., a suit alleging PBM Defendants conspired with manufacturing defendants to artificially raise the price of insulin paid by diabetics in California, the Plaintiff included a disclaimer waiving federal claims. On appeal, the Ninth Circuit held that the disclaimer failed to defeat federal officer removal because its scope was too broad, and it allowed for rebate negotiations to remain "causally connected to the dispute." California v. CaremarkPCS Health LLC, No. 23-55597, 2024 WL 3770326, (9th Cir. Aug. 13, 2024).

In this instance, Plaintiff's disclaimer is more specific than the disclaimer in California v. Eli Lilly & Co. In addition to disclaiming claims and damages stemming from Defendant's federal work, Plaintiff also disclaims the assertion of any claims individual citizens may have against defendants. Thus, the Court finds that Plaintiff's disclaimer is sufficient to defeat federal officer removal.

### E. Motion for Sanctions

28 U.S.C. § 1447(c) states that "[a]n order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." The Ninth Circuit has found that attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. Kolova v. Allstate Ins. Co., 438 F. Supp. 3d 1192, 1198 (W.D. Wash. 2020) (citing Martin v. Franklin Capital Corp., 546 U.S. 136, 126 S. Ct. 704.)

Plaintiff argues Defendants should be sanctioned for excluding relevant caselaw that forecloses their basis for removal. Defendants contend that they met the pleading requirement and argue that removal is proper.

A notice of removal need only contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1447(a). The Court does not find a sufficient basis from the record to grant

sanctions in this case.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Remand is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions is **DENIED.**

**DATED:** March 30, 2025.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE